IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STEVEN ROSATI**, an individual,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>**LONG ISLAND RAILROAD**, **METROPOLITAN TRANSIT AUTHORITY**, and **PATRICK J. FOYE**, individual,<br><br>　　　　Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

COMES NOW Plaintiff Steven Rosati, by and through his attorneys, as his Complaint against Defendants Long Island Railroad ("LIRR"), Metropolitan Transit Authority ("MTA"), and Patrick J. Foye ("Foye") (collectively, "Defendants"), pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1988, New York Labor Law, and New York common law for violations of his rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, wrongful discharge, and defamation. In support of his causes of action, Plaintiff alleges as follows:

## **PARTIES**

1.　　Plaintiff Steven Rosati is a citizen of the United States residing, South Carolina.

2.　　Defendant Long Island Railroad is incorporated in the state of New York and its principal place of business is Jamaica, New York.

3.　　Defendant Metropolitan Transit is incorporated in the state of New York and its principal place of business is in New York, New York.

1

4.     Defendant Patrick J. Foye, is a citizen of the United States and residing in the state of New York.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1985, and 1986.

6.     This Court has supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has supplemental jurisdiction over Plaintiff's claims for wrongful termination pursuant to 28 U.S.C § 1367(a).

8.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

9.     Mr. Rosati has worked for the LIRR from June 2018 to the present.

10.    Mr. Rosati worked as a conductor.

11.    All of Rosatis' engagement in activity is protected under Section 201-d of the NYLL.

12.    On January 20, 2021, the LIRR discriminated against Mr. Rosati by suspending him without pay.

13.    The LIRR threatened Mr. Rosati with termination as a result of the disciplinary trial, scheduled for April 20, 2021.

14.    The MTA and Foye have defamed Mr. Rosati in the process.

15.    Claimant operates multiple politically minded social media pages.

16. Mr. Rosati publishes podcasts and online videos covering a wide range of political topics.

17. Mr. Rosati manages the "Unfiltered Conservative" page on Twitter and Tik Tok.

18. Mr. Rosati manages the "Clash Brothers United" page on Twitter and Tik-Tok.

19. Mr. Rosati manages the audio podcast that accompanies "Unfiltered Conservative" and "Clash Brothers United" pages.

20. Claimant manages the "Unfiltered Conservative" and "Clash Brothers United" page on Twitter and Tik-Tok on his own time.

21. Claimant manages the "Unfiltered Conservative" and "Clash Brothers United" page on Twitter and Tik-Tok outside of working hours.

22. Mr. Rosati regularly updates his subscribers on the latest political news and campaigns for conservative candidates and causes on the aforementioned sites/pages

23. Mr. Rosati continuously voiced support and publicly campaigned for former President Donald J. Trump and other conservative candidates and causes on the aforementioned social media pages/sites.

24. In the months leading up to the 2020 Presidential Election, Mr. Rosatis' social media and podcast episodes campaigned for President Trump's reelection.

25. Rosati publishes all statements, audio files, and videos on his social media pages and podcasts while off the job site and not on LIRR time.

26. Rosati publishes all statements, audio files, and videos on his social media pages and podcasts on the aforementioned pages/sites without using any equipment belonging to the LIRR.

27. On January 21, 2021, the LIRR initiated an internal investigation in connection with what it deemed to be Claimant's inappropriate social media activity.

28. The LIRR's senior administration brought Mr. Rosati in for questioning.

29. Rosatis' union representative was present during the questioning.

30. At the aforementioned meeting Rosati stated that he was simply exercising his First Amendment rights by giving his opinion on current political issues.

31. Shortly thereafter, the LIRR informed Rosati that it was suspending him, without pay, as of January 21, 2021.

32. Rosatis' suspension was pending the results of the disciplinary hearing scheduled for April 20, 2021.

33. MTA Chairman, Respondent Foye, acting both in his capacity as MTA Chairman and on his own, has defamed Rosati.

34. During the January 21, 2021, MTA Board Meeting, which was open to the public, Foye maliciously stated that "Rosatis conduct at the Capitol ought to be investigated and is being investigated."

35. The aforementioned statement is false, as it implies that Claimant participated in criminal activity by joining the insurrection and/or infiltrating the Capitol building.

36. Rosati simply peacefully assembled outside of the capital building

37. Rosati is not the subject of any criminal investigation and has not been charged with any crime because of his peaceful assembly.

38. The First Amendment to the United States Constitution guarantees Mr. Rosati's fundamental right to free speech. USCS Const. Amend. I.

39. Social media platforms that facilitate the free exchange of ideas, such as the ones utilized in this case, are modern-day equivalents to streets or parks, and are subject to traditional public forum analysis for First Amendment purposes.

## LEGAL FRAMEWORK

### A. FEDERAL CLAIMS

40. The First Amendment to the United States Constitution guarantees Mr. Rosati's fundamental right to free speech. USCS Const. Amend. I.

41. At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. Time and again, the United States Supreme Court has emphasized that "[t]he freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–51 (1988). The freedom to speak one's mind on matters of public concern—as Mr. Rosati did here—"has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 455, 466–67 (1980).

42. The Court has been clear as to the internet's central role in modern public debates: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, [citation], and social media in particular." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

43. Social media platforms that facilitate the free exchange of ideas, such as Facebook, are modern-day equivalents to streets or a park, and are subject to traditional public forum analysis for First Amendment purposes. *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019).

5

44. Official censorship based on a government actor's subjective judgment that the content of protected speech is offensive or inappropriate is unconstitutional "viewpoint discrimination." *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017). Viewpoint discrimination is an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983). In other words, discrimination against speech because of its message is presumed to be unconstitutional.

45. Viewpoint discrimination is prohibited in all forums and "is apparent, for example, where a government official's decision to take a challenged action was 'impermissibly motivated by a desire to suppress a particular point of view.'" *Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc*., 473 U.S. 788, 802 (1985)).

46. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution commands that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When, as in this case, an equal protection violation arises from a First Amendment violation, the two claims are "fused" together. *Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013) (citing *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 384–85 n.4 (1992)).

47. Federal statutory law permits Mr. Rosati to bring a private cause of action to redress violations of his rights guaranteed by the Bill of Rights in the United States Constitution. Specifically, 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

48. Federal law also extends civil liability to those who conspire to violate constitutionally protected rights, *id*. § 1985, and to those with knowledge of such a conspiracy and the power to prevent or aid in preventing the wrongs conspired to be done, yet fail to do so. *Id*. § 1986.

49. Congress has also provided that in an action such as this one, the court may allow the plaintiff to recover attorney fees. *Id*. § 1988(b). The Court may also include expert witness fees when awarding attorney's fees. *Id*. § 1988(c).

50. As used in sections 1983, 1985, and 1986, the term "person" includes all individual Defendants in this action. Defendants is also a "person" within the meaning of these statutes. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1977).

### B. STATE CLAIMS

51. Governmental entity may not discharge or retaliate against an employee based on that employee's exercise of the right of free speech. U.S.C.A. Const. Amend. 1; *Rigle v. Cnty. of Onondaga*, 267 A.D.2d 1088 (4th Dep't 1999).

52. The determination whether a public employer has properly discharged an employee for engaging in speech requires a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees; pertinent considerations in balancing those interests are whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships

for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. U.S.C.A. Const. Amend. 1. ID

53. The Pickering test for determining whether a public employee's speech is protected recognizes that vigilance is necessary to ensure public employers do not use their authority to silence discourse not because it hampers public functions but simply because superiors disagree with the content of the employees' speech. U.S.C.A. Const. Amend. 1; *Santer v. Bd. of Educ. Of E. Meadow Union Free Sch. Dist.*, 23 N.Y.3d 251 (2014).

54. To satisfy the second step of the Pickering test for determining whether a public employee's speech is protected, the public employer bears the burden of showing that the discipline arising out of the employee's protected activity was justified. U.S.C.A. Const. Amend. 1. *Id*.

55. To make out an unlawful retaliation claim under New York City Human Rights Law (NYCHRL), a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct. N.Y.C. Admin. Code, § 8-107; *Reichman v. City of N.Y.*, 179 A.D.3d 1115 (2d Dep't 2020)

56. Once an employee has established a prima facie case of retaliation under the Human Rights Law, the burden shifts to the employer to present legitimate, independent, and nondiscriminatory reasons to support its actions; then, if the employer meets this burden, the employee has the obligation to show that the reasons put forth by the employer are merely a pretext.

8

McKinney's Executive Law § 296, subd. 1(e); *Pace v. Ogden Servs. Corp.*, 257 A.D.2d 101 (3d Dep't 1999).

### COUNT I
### Retaliation Based on Exercise of the Right to Free Speech in Violation of 42 U.S.C. § 1983
### (All Defendants)

57. Defendants managed, had authority over, and or were materially involved in the decision to suspend Mr. Rosati.

58. On or about, 2020, Mr. Rosati posted several comments in support of former president Donald Trump and his reelection campaign, in his private time, outside the scope of his official duties as an LIRR employee.

59. Mr. Rosatis social media post(s) at issue constitute constitutionally protected activity commenting as a private citizen on matters of public concern, on personally ran social media accounts.

60. As a result of Mr. Rosatis' constitutionally protected activity, Mr. Rosati was subjected to adverse action by Defendants that would chill an ordinary person from continuing to engage in that protected activity.

61. There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken by Defendants against Mr. Rosati.

62. As a direct result of Mr. Rosati exercising his constitutional right to speak publicly, in his own time, as a private citizen, on a matter of public concern, Defendants retaliated against him, including taking adverse employment actions by suspending Mr. Rosatis' employment.

63. At all times mentioned herein, Mr. Rosatis' speech was on matters of widely debated public concern.

64. By taking employment action against Mr. Rosati that was substantially motivated by the content of Mr. Rosatis' constitutionally protected speech, Defendants violated Mr. Rosatis' First Amendment rights.

65. Defendants, acting under color of state law, terminated Mr. Rosatis' employment with LIRR based on Mr. Rosatis social media posts in support of Mr. Trump and other conservative views.

66. Defendants were acting within the scope of their employment or agency with the LIRR when Defendants intentionally terminated Mr. Rosati in response to his private social media posts supporting Mr. Trump, as well as other conservative politicians.

67. Defendants, in their act of suspending Mr. Rosati, engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their disapproval of Mr. Rosatis' political viewpoints in support of Mr. Trump and his political campaign.

68. As a direct, foreseeable, and proximate result of Defendants' acts and omissions, Mr. Rosati suffered—and continues to suffer—significant damages including psychological and emotional harms, reputational harms, lost promotion opportunities and associate wages and pension income, and lost future income from post retirement private sector employment opportunities that will be unavailable to him.

69. Defendants acted intentionally and with malice towards Mr. Rosati to deny his freedoms protected by the First Amendment when they suspended his employment.

70. WHEREFORE Plaintiff requests compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other costs as permitted by 42 U.S.C. § 1988.

**COUNT II**
**Retaliation Based on Exercise of Right to Free Speech in**

## Violation of 42 U.S.C. § 1985
### (All Defendants)

71.     Defendants managed, had authority over, and or were materially involved in the decision to suspend Mr. Rosati.

72.     Defendants managed, had authority over, and or were materially involved in the decision to suspend Mr. Rosati.

73.     On or about, 2020, Mr. Rosati posted several comments in support of former president Donald Trump and his reelection campaign, in his private time, outside the scope of his official duties as an LIRR employee.

74.     Mr. Rosatis social media post(s) at issue constitute constitutionally protected activity commenting as a private citizen on matters of public concern, on personally ran social media accounts.

75.     As a result of Mr. Rosatis' constitutionally protected activity, Mr. Rosati was subjected to adverse action by Defendants that would chill an ordinary person from continuing to engage in that protected activity.

76.     There was a substantial causal relationship between the constitutionally protected activity and the adverse action taken by Defendants against Mr. Rosati.

77.     As a direct result of Mr. Rosati exercising his constitutional right to speak publicly, in his own time, as a private citizen, on a matter of public concern, Defendants retaliated against him, including taking adverse employment actions by suspending Mr. Rosatis' employment.

78.     At all times mentioned herein, Mr. Rosatis' speech was on matters of widely debated public concern.

79. By taking employment action against Mr. Rosati that was substantially motivated by the content of Mr. Rosatis' constitutionally protected speech, Defendants violated Mr. Rosatis' First Amendment rights.

80. Defendants, acting under color of state law, terminated Mr. Rosatis' employment with LIRR based on Mr. Rosatis social media posts in support of Mr. Trump and other conservative views.

81. Defendants were acting within the scope of their employment or agency with the LIRR when Defendants intentionally terminated Mr. Rosati in response to his private social media posts supporting Mr. Trump, as well as other conservative politicians.

82. Defendants, in their act of suspending Mr. Rosati, engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their disapproval of Mr. Rosatis' political viewpoints in support of Mr. Trump and his political campaign.

83. Defendants conspired to deprive Mr. Rosati of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

84. In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act, to wit, upon information and belief, one or more of the Defendants decided to, and did, suspend Mr. Rosati because his political views and speech on social media.

85. The Defendants, in suspending Mr. Rosatis' employment, engaged unconstitutional viewpoint discrimination because their actions were substantially motivated by their dislike of Mr. Rosatis' viewpoints in support of Mr. Trump and his political affiliation.

86. Defendants achieved the objective of their conspiracy. By suspending Mr. Rosati, the Defendants punished Mr. Rosati for participating as a private citizen in a public debate of great

public concern. Defendants improperly curtailed Mr. Rosatis' freedom of expression in violation of the First Amendment to the United States Constitution.

87. As a direct, foreseeable, and proximate result of Defendants' acts and omissions, Mr. Rosati suffered—and continues to suffer—significant damages, including reputational harms, lost promotion opportunities and associated wages and pension income, and lost future income from post-retirement private sector employment opportunities that will be unavailable to him.

88. Defendants acted intentionally and with malice towards Mr. Rosati to deny his freedoms protected by the First Amendment when they suspended his employment.

89. WHEREFORE Plaintiff requests compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other costs as permitted by 42 U.S.C. § 1988.

## COUNT III
### Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1986
### (All Defendants)

90. Defendants managed, had authority over, and or were materially involved in the decision to suspend Mr. Rosati.

91. Defendants managed, had authority over, and or were materially involved in the decision to suspend Mr. Rosati.

92. On or about, 2020, Mr. Rosati posted several comments in support of former president Donald Trump and his reelection campaign, in his private time, outside the scope of his official duties as an LIRR employee.

93. Defendants conspired to deprive Mr. Rosati of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

94. In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act, to wit, upon information and belief, one or more of the Defendants decided to, and did, suspend Mr. Rosati because of his social media posts and verbiage.

95. Defendants, in their act of suspending Mr. Rosati, engaged in unconstitutional viewpoint discrimination because their actions were substantially motivated by their disapproval of Mr. Rosatis' political viewpoints in support of Mr. Trump and his political campaign.

96. Defendants achieved the objective of their conspiracy. By suspending Mr. Rosati, the Defendants punished Mr. Rosati for participating as a private citizen in a public debate of great public concern. Defendants improperly curtailed Mr. Rosatis' freedom of expression in violation of the First Amendment to the United States Constitution.

97. Defendants had knowledge that the wrongs conspired to be done in violation of Mr. Rosatis' First and Fourteenth Amendment rights were about to be committed. Despite having power to prevent or aid in preventing the commission of the same, Defendants neglected or refused to do so.

98. WHEREFORE Plaintiff requests compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other costs as permitted by 42 U.S.C. § 1988.

### COUNT IV
**Wrongful Discharge Under Federal Law**
**(All Defendants)**

99. Defendants wrongfully discharged Mr. Rosati because:

100. An employment relationship existed between Mr. Rosati and the LIRR.

101. Defendants intentionally, maliciously, or wrongfully terminated Mr. Rosati because Mr. Rosati exercised his federal right to freedom of speech enshrined in the First Amendment.

102. WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other cost as permitted by law.

## COUNT V
## Retaliation Based Under State Law
**(All Defendants)**

103. Mr. Rosati's Facebook posts were made using Mr. Rosati's personal device, outside the scope of his employment, on Mr. Rosati's private social media account.

104. Mr. Rosati was participating, in his capacity as a private citizen, in a public conversation on a topic of national concern when he voiced his support President Donald J. Trump.

105. Defendants, acting within the scope of their employment intentionally terminated Mr. Rosati's employment in response Facebook posts.

106. Defendants' actions in terminating Mr. Rosati were substantially motivated by their disapproval of Mr. Rosati's political viewpoints.

107. By terminating Mr. Rosati's employment, Defendants denied his freedoms protected by Article ___ of the New York Declarations of Rights.

108. WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other cost as permitted by law.

## COUNT V
## Retaliation Based Under State Law
**(All Defendants)**

109. Defendants wrongful discharged Mr. Rosati because:

    a. An employment relationship existed between Mr. Rosati and Long Island Railroad

    b. Defendants intentionally, maliciously, or wrongfully terminated Mr. Rosati because of Mr. Rosati's speech on matters of public concern, in violation of Article 8 of the New York State Constitution.

    c. Defendants' conduct violated the public policy of the State of New York.

110. WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial, together with reasonable attorney's fees, expert witness fees, and other cost as permitted by law.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants as follows:

i. An award of compensatory, special, and punitive damages in appropriate amounts to be established at trial;

ii. An award of costs associated with this action; and

iii. Any and all other or further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

Date: October 20, 2021                                    Respectfully Submitted,

                                                          **JACOBS P.C.**

                                                          /s/Leo Jacobs
                                                          Leo Jacobs, Esq.
                                                          Leo@jacobspc.com
                                                          8002 Kew Gardens Road
                                                          New York, NY 11415
                                                          T: (718) 772-8704
                                                          *Counsel for Plaintiff Steven Rosati*